No. 24-4530

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

JULIE BALLOU,
Plaintiff/Appellee,

v.

CITY OF VANCOUVER, a municipal corporation,
Defendant/Appellant;

and,

JAMES McELVAIN, Ph.D.,
in his individual and representative capacity,
Defendant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
No. 3:19-cv-05002-DGE
Honorable David G. Estudillo

REPLY BRIEF OF APPELLANT
CITY OF VANCOUVER

CITY ATTORNEY'S OFFICE
VANCOUVER, WASHINGTON

DANIEL G. LLOYD, ESQ.
SARA BAYNARD-COOKE, ESQ.
Assistant City Attorneys
P.O. Box 1995
Vancouver, WA 98668-1995
**Tel:** (360) 487-8500
**Fax:** (360) 487-8501
dan.lloyd@cityofvancouver.us
sara.baynard-cooke@cityofvancouver.us

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.........................................................i

TABLE OF AUTHORITIES ................................................. iii

INTRODUCTION ................................................................1

ARGUMENT ......................................................................3

I.    The fee award wrongly presumed that any success constituted substantial success. ..................................................................4

    A.    Both *McGinnis* and *McCown* are legally indistinguishable and command that the District Court's decision be reversed. .....................5

    B.    When a plaintiff recovers one percent of that demanded in settlement days before trial, a district court abuses its discretion by completely ignoring that discrepancy. ............................................7

    C.    The District Court's reliance on prior awards as the basis for calculating the lodestar necessarily shows it wrongfully equated Ballou's results with plaintiffs achieving significant success...............9

II.    Because the District Court's lodestar calculation rests on a mistaken view of the law, the fee award cannot stand..................................11

    A.    Contrary to the District Court's assumption, no bright-line rule holds an employment relationship alone meets *Hensley*'s relatedness test...................................................................................12

    B.    Ballou's effort to dismiss Washington Supreme Court precedent is unavailing. .....................................................................................16

# TABLE OF CONTENTS (continued)

Page

III.  Only by distorting case law, McElvain's appeal, and the verdict can
      Ballou defend the District Court's failure to explain why *Ballou I* was
      necessary to prove one claim against a different defendant to which no
      right of interlocutory review existed. ...........................................................18

      A.  The authority on which Ballou relies does not help her because
          Ballou lost all her claims against the sole appellant in *Ballou I*. ........19

      B.  Contrary to Ballou's supposition, McElvain's appeal focused
          solely on the constitutional claims that Ballou ultimately lost. ..........20

      C.  When juxtaposed against the jury instructions, the verdict
          negates any inference that McElvain was found to have acted
          with retaliatory animus, further undermining any contention
          that time spent in *Ballou I* should have been compensated. ...............23

IV.   The upward adjustment wrongly Ballou a functionally full fee despite
      minimal success, a decision finding no basis in law or fact..........................26

V.    By failing to appeal the FRCP 68 order holding her liable for
      Defendants' costs, Ballou forfeited any right to seek fees on appeal. ..........30

CONCLUSION ....................................................................................................31

CERTIFICATE OF COMPLIANCE .......................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

### UNITED STATES SUPREME COURT CASES

*Bostock v. Clayton County*,
  590 U.S. 644 (2020)............................................................................24

*City & County of San Francisco v. Sheehan*,
  575 U.S. 600 (2015)............................................................................18

*El Paso Nat. Gas Co. v. Neztsosie*,
  526 U.S. 473 (1999)........................................................................30, 31

*Farrar v. Hobby*,
  506 U.S. 103 (1992)..........................................................................3, 8

*Fox v. Vice*,
  563 U.S. 826 (2011)............................................................................11

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)..................................... 1, 2, 4, 10, 13, 27, 31

*Hewitt v. Helms*,
  482 U.S. 755 (1987)............................................................................19

*Linke v. Freed*,
  601 U.S. 187 (2024)............................................................................29

*Marek v. Chesny*,
  473 U.S. 1 (1985)..........................................................................8, 30

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1978)............................................................................15

*Nieves v. Bartlett*,
  587 U.S. 391 (2019)............................................................................24

*Perdue v. Kenny A.*,
  559 U.S. 542 (2010)......................................................................8, 27, 29

*Plumhoff v. Rickard*,
  572 U.S. 765 (2014)............................................................................21

**Page(s)**

**UNITED STATES SUPREME COURT CASES (continued)**

*Scott v. Harris,*
    550 U.S. 372 (2007)........................................................................12

*Smith v. Spizzirri,*
    601 U.S. 472 (2024)..........................................................................8

*Tolan v. Cotton,*
    572 U.S. 650 (2014) (per curiam)............................................23, 28


**UNITED STATES COURT OF APPEALS CASES**

*A.D. v. Cal. Highway Patrol,*
    712 F.3d 445 (9th Cir. 2013) .........................................................7, 8

*Ambat v. City & County of San Francisco,*
    757 F.3d 1017 (9th Cir. 2014) .........................................................13

*Ballou v. McElvain,*
    29 F.4th 413 (9th Cir. 2022) .................................... 18, 19, 21, 22, 23, 24, 25

*Brown v. Roe,*
    279 F.3d 742 (9th Cir. 2002) ............................................................8

*Cabrales v. City of Los Angeles,*
    935 F.2d 1050 (9th Cir. 1991) ....................................................19, 20

*Camacho v. Bridgeport Fin., Inc.,*
    523 F.3d 973 (9th Cir. 2008) .................................................4, 8, 18

*Champion Produce, Inc. v. Ruby Robinson Co.,*
    342 F.3d 1016 (9th Cir. 2003) ......................................................8, 30

*Christian v. Umpqua Bank,*
    984 F.3d 801 (9th Cir. 2020) ..........................................................29

*City of Pomona v. SQM N. Am. Corp.,*
    866 F.3d 1060 (9th Cir. 2017) ........................................................10

*Cunningham v. County of Los Angeles,*
    879 F.2d 481 (9th Cir. 1988) ..........................................................27

**Page(s)**

**UNITED STATES COURT OF APPEALS CASES (continued)**

*El-Hakem v. BJY, Inc.,*
  415 F.3d 1068 (9th Cir. 2005) ................................................................11, 24

*Hart v. City of Redwood City,*
  99 F.4th 543 (9th Cir. 2024) ......................................................................20

*Ingram v. Oroudjian,*
  647 F.3d 925 (9th Cir. 2011) ...................................................................9, 10

*Guerrero v. Cummings,*
  70 F.3d 1111 (9th Cir. 1995) .................................................................30, 31

*Jones v. Blanas,*
  393 F.3d 918 (9th Cir. 2004) ........................................................................8

*Kerr v. Screen Extras Guild, Inc.,*
  526 F.2d 67 (9th Cir. 1975) ........................................................................26

*Lohman v. Duryea Borough,*
  574 F.3d 163 (3d Cir. 2009) ..........................................................................7

*Marks v. Clarke,*
  102 F.3d 1012 (9th Cir. 1996) ....................................................................19

*McCown v. City of Fontana,*
  565 F.3d 1097 (9th Cir. 2009) ..........................................................3, 5, 6, 9

*McGinnis v. Kentucky Fried Chicken,*
  51 F.3d 805 (9th Cir. 1994) ...........................................................3, 4, 5, 6, 8

*McGrath v. County of Nev.,*
  67 F.3d 248 (9th Cir. 1995) ..........................................................................9

*Morales v. City of San Rafael,*
  96 F.3d 359 (9th Cir. 1996) ........................................................................29

*Moreno v. City of Sacramento,*
  534 F.3d 1106 (9th Cir. 2008) ....................................................................24

*Muniz v. UPS,*
  738 F.3d 214 (9th Cir. 2013) ......................................................................16

**Page(s)**

UNITED STATES COURT OF APPEALS CASES (continued)

*Odima v. Westin Tucson Hotel,*
　　53 F.3d 1484 (9th Cir. 1995) ....................................................12, 13, 14, 16

*Romberg v. Nichols,*
　　970 F.2d 512 (9th Cir. 1992) .................................................................19, 20

*Thomas v. City of Tacoma,*
　　410 F.3d 644 (9th Cir. 2005) ...........................................................11, 12, 18

*Thorne v. City of El Segundo,*
　　802 F.2d 1131 (9th Cir. 1986) ......................................................................13

UNITED STATES DISTRICT COURT CASES

*Berg v. Bethel Sch. Dist.,*
　　No. C18-5345 BHS,
　　*at* 2022 U.S. Dist. LEXIS 90422 (W.D. Wash. May 19, 2022) .....................9, 10

*Peña v. Clark County,*
　　No. 3:21-cv-05411-DGE (W.D. Wash. Dec. 1, 2023),
　　*reproduced in* Br. of Appellant, Appx. B .......................................................9, 10

*Thomas v. Cannon,*
　　No. 3:15-05346 BJR,
　　*at* 2018 U.S. Dist. LEXIS 52181 (W.D. Wash. Mar. 28, 2018) .....................9, 10

STATE COURT CASES

*224 Westlake, LLC v. Engstrom Props., LLC,*
　　281 P.3d 693 (Wash. Ct. App. 2012) ............................................................28

*Baker v. Fireman's Fund Ins. Co.,*
　　428 P.3d 155 (Wash. Ct. App. 2018) ............................................................27

*Berryman v. Metcalf,*
　　312 P.3d 745 (Wash. Ct. App. 2013) ............................................................26

Page(s)

**STATE COURT CASES (continued)**

*Bloor v. Fritz,*
    180 P.3d 805 (Wash. Ct. App. 2008) ...........................................27

*Bowers v. Transam. Title Ins. Co.,*
    675 P.2d 193 (Wash. 1983) ...........................................................27

*Carlson v. Lake Chelan Cmty. Hosp.,*
    66 P.3d 1080 (Wash. Ct. App. 2003) ...........................................27

*Hume v. Am. Disposal Co.,*
    880 P.2d 988 (Wash. 1994) ...........................................................17

*Kahn v. Salerno,*
    951 P.2d 321 (Wash. Ct. App. 1998) ...........................................16

*Kastanis v. Educ. Emps. Credit Union,*
    859 P.2d 26 (Wash. 1993) .......................................................16, 17

*Morgan v. Kingen,*
    210 P.3d 995, 1000 (Wash. 2009) .................................................27

*Perry v. Costco Wholesale, Inc.,*
    98 P.3d 1264 (Wash. Ct. App. 2004) ...........................................27

*Wheeler v. Catholic Archdiocese,*
    880 P.2d 29 (Wash. 1994). ............................................................31


**FEDERAL STATUTES**

29 U.S.C. § 2617 ...............................................................................31

42 U.S.C. § 1983 ........................................................1, 16, 19, 29


**WASHINGTON STATE STATUTES**

Ch. 49.48 RCW ..................................................................................31

**Page(s)**

**FEDERAL RULES**

FRAP 32(a)(5) ......................................................................................... 33

FRAP 32(a)(6) ......................................................................................... 33

FRAP 32(f) .............................................................................................. 33

FRCP 68 ............................................................................................ 30, 31

9TH CIR. R. 32-1 ..................................................................................... 33

# INTRODUCTION

Forty years ago, the Supreme Court cemented "the degree of success obtained" as "the most critical factor" in determining a reasonable fee, and that the yardstick to measure that factor is the "relationship between the amount of the fee awarded and the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983). Comparing Ballou's operative complaint against the jury's verdict, Ballou's lack of success becomes glaring:

## EMPLOYMENT ACTION

|  |  | IA INVESTIGATIONS | 07/2018 PROMOTION | 10/2018 PROMOTION | 01/2019 PROMOTION |
|---|---|---|---|---|---|
|  | §1983 | Defendants | Defendants | Defendants | Defendants |
|  | HARASSMENT | Defendants | N/A | N/A | N/A |
| CLAIM | DISPARATE TREATMENT | Defendants | Defendants | Defendants | Defendants |
|  | RETALIATION | Defendants | N/A | Defendants | Plaintiff (vs. City only) |

*Compare* 3-ER-581-591 *to* FER-136 *and* 2-ER-318-321. Though the District Court repeatedly encouraged settlement before and during trial, *see* FER-005-06, Ballou's last demand before the jury was impaneled was $1,200,000 plus all attorneys' fees (including those after the rejected offer of judgment), an admission of discrimination, all discipline overturned, and her seniority adjusted so that she

1

was never passed over for promotion, 2-ER-255. Compared to that valuation, the "results [Ballou] obtained" illuminates even more failure:

| | **DESIRED REMEDY** | **RESULT OBTAINED** |
|---|---|---|
| Back-Pay | $15,458.08 | $5,456.20 |
| Noneconomic Damages, Employer Contributions to Retirement & Deferred Compensation, Prejudgment Interest | $1,184,541.92 | $7,309.35 |
| Seniority | Retroactive to July 2018 & greater seniority than Erik Jennings | Same as if jury returned complete defense verdict |
| Discipline | Exoneration of misconduct and revocation of discipline | N/A |
| Gender Discrimination | Public Admission of Gender Discrimination | N/A |

*Compare id.* and 2-ER-273-274 *to* 2-ER-318-321. In sum, Ballou lost on eleven of twelve claims, obtaining (1) one-third of back-pay sought, (2) 0.6% of all other monetary relief, and (3) nothing else. She refused a settlement over a year before trial that, under a traditional one-third contingency fee arrangement, would have pocketed her almost 14 times more than what she ultimately recovered. 2-ER-253. And she later refused a more favorable offer of judgment, resulting in a debt of $8,230.33 she still owes today. 1-ER-28, 2-ER-198.

Calling these results anything close to "success" is ludicrous.

Despite *Hensley*'s emphasis that "results" are the North Star to guide any fee award, 461 U.S. at 437, the District Court awarded an amount more than 92% of

the lodestar Ballou's attorneys requested without comparing its final fee award to the results obtained. 1-ER-3-14. That decision cannot be reconciled with *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805 (9th Cir. 1994), or *McCown v. City of Fontana*, 565 F.3d 1097 (9th Cir. 2009). Ballou's attempts to distinguish these cases are unpersuasive. When viewed through the correct lens, the District Court's order cannot be sustained.

The Court should vacate and remand.

## **ARGUMENT**

For reasons unexplained, Ballou devotes substantial effort to arguing the District Court was required to employ the lodestar method, stressing that this case falls outside the "narrow, limited exception" of *Farrar v. Hobby*, 506 U.S. 103 (1992), when a court can award no fees. Br. of Appellee at 29-33. The City never took that stance. SER-019-029. That Ballou needs to transmogrify the City's arguments to better defend the decision below illustrates its indefensibility.

As explained below and in the City's opening brief, the District Court's fee award cannot be squared with precedent.

I.    **The fee award wrongly presumed that any success constituted substantial success.**

Even though the District Court utilized the lodestar method, precedent required that it "award only that amount of fees that is reasonable *in relation to the results obtained*" regardless of whether unsuccessful claims are deemed related.[1] *Hensley*, 461 U.S. at 440 (emphasis added). In their petition, Ballou's lawyers sought a lodestar of $660,696, SER-115, and the District Court awarded them $611,756.43, 1-ER-15. Yet nowhere did the District Court explain how a fee 92.6% of the requested lodestar was reasonable considering Ballou lost most of her case.[2]

It must be remembered that when reviewing a fee award, this Court "review[s] the adequacy of the district court's own articulated reasoning, not the after-the-fact rationalizations offered by counsel." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Given that "district court[s] abuse[] [their] discretion *by expressly refusing to relate the extent of success to the amount of the*

---

[1] The City maintains the District Court erred by finding all claims to be related. *See also infra* Part II.

[2] Ballou's quarrel with the reality that "the jury rejected 'most' of her case" does not change the result. Br. of Appellee at 1. This is especially true when she later defends the fee award by highlighting her lack of success. *Id.* at 42.

*fee award*," *McGinnis*, 51 F.3d at 810 (emphasis added), the order below cannot stand.

### A. Both *McGinnis* and *McCown* are legally indistinguishable and command that the District Court's decision be reversed.

The City offered two cases in which this Court reversed fee awards under the abuse of discretion standard because those district courts failed to adequately account for limited success. *McCown*, 565 F.3d at 1103-05; *McGinnis*, 51 F.3d at 809-10. Ballou's attempts to distinguish these cases are unconvincing.

For *McGinnis*, Ballou incorrectly assumes "the trial court reduced the damage award" by $200,000 but left the fee award intact. Br. of Appellee at 41. Based on this conjecture, she says *McGinnis* is different because, "In Ballou's case, there was no award of attorney fees, followed by a substantial reduction in relief with no change, or explanation for the lack of change, in attorney fees." *Id.* at 42. Contrary to Ballou's misreading, the damage reduction in *McGinnis* occurred when this Court "vacate[d] the [$200,000] punitive damages award." *McGinnis*, 51 F.3d at 808. Next addressing the fee award, this Court held that "the district court abused its discretion *by expressly refusing to relate the extent of success to the amount of the fee award*," and commanded "[t]he district court [to] *reduce the attorneys fees award so that it is commensurate with the extent of the plaintiff's success*." *Id.* at 810 (emphasis added). *McGinnis* issued that directive while emphasizing that "[l]awyers might reasonably spend $148,000 worth of time to

win $234,000[,] [b]ut no reasonable person would pay lawyers $148,000 to win $34,000." *Id*. Aside from inaccurately describing the case's procedural history and ignoring the holding, Ballou makes no effort to reconcile the decision below with *McGinnis*. That lack of effort is telling because reconciliation is impossible.

Her bid to distinguish *McCown* fares no better. She argues that the District Court heeded *McCown* by noting her loss on all but one claim "figures into the calculation of attorney fees." 1-ER-6. *McCown*'s holding is deeper than claims-won-divided-by-claims-alleged. The district court there awarded $200,000, citing the plaintiff's request for $301,551.22 as "excessive." *McCown*, 565 F.3d at 1101. Pointing to the large discrepancy between the $20,000 the plaintiff obtained and his earlier $251,000 settlement demand, this Court held the district court abused its discretion by reducing the fee award by only one-third, holding it "unreasonable to grant [McCown's] attorneys more than a comparable portion of the fees and costs they requested." *Id.* at 1104-05. In other words, when comparing a much smaller discrepancy between a settlement demand and result, this Court held a one-third reduction—greater than any claimed discount by the District Court below—was too small. *Id.*

If the district courts in *McGinnis* and *McCown* abused their discretion by awarding what they did, then the District Court below most assuredly did as well.

6

**B.** **When a plaintiff recovers one percent of that demanded in settlement days before trial, a district court abuses its discretion by completely ignoring that discrepancy.**

Conceding the District Court ignored the monumental gap between her demands and what she obtained, Ballou argues the District Court had no reason to mention the disparity, advancing two arguments for support. Br. of Appellee at 43-44. Neither has merit. First, she broadly reads *A.D. v. California Highway Patrol*, 712 F.3d 445 (9th Cir. 2013), as authority that a court can always ignore settlement discussions when evaluating a fee petition. The award there was reversed because that district court expressly refused to consider settlement talks to measure success. *Id.* at 460. When *A.D.* noted a district court's ability to disregard settlement negotiations, it did so because sometimes settlement negotiations have "'no[] bearing on [measuring a litigant's] success." *Id.* at 461 (quoting *Lohman v. Duryea Borough*, 574 F.3d 163, 169 (3d Cir. 2009)). Particularly when the negotiations are the only evidence reflecting how Ballou valued her case given *her counsel*'s discovery violations, *see* 3-ER-503, it is absurd to suggest the $1.88 million gap between Ballou's demand and what she recovered had "'no[] bearing on [measuring Ballou's] success." *A.D.*, 712 F.3d at 461 (quoting *Lohman*, 574 F.3d at 169). If the District Court truly thought Ballou's valuation reflected nothing of what success Ballou attained, it never explained why. Nothing in *A.D.* overruled the principle that a district court "'must actually exercise its discretion' rather than

7

simply ignore the evidence or reject it *sub silentio*." *Jones v. Blanas*, 393 F.3d 918, 935 (9th Cir. 2004) (quoting *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002)). Again, this Court "review[s] the adequacy of the district court's own articulated reasoning, not the after-the-fact rationalizations offered by counsel." *Camacho*, 523 F.3d at 979. Even under *A.D.*, the District Court could not ignore the only evidence in existence revealing "the amount [Ballou] sought." *Farrar*, 506 U.S. at 114. A court's discretion in fee awards "is not unlimited." *Perdue v. Kenny A.*, 559 U.S. 542, 558 (2010).

Ballou's second argument is even less persuasive. She argues that "there was no reason for the District Court to grant a second reduction in attorney fees" because all fees incurred after the offer of judgment were denied. Br. of Appellee at 44. What she ignores is that the prohibition on recovering postoffer fees is not discretionary. *Marek v. Chesny*, 473 U.S. 1, 9 (1985); *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1026 (9th Cir. 2003); *see also Smith v. Spizzirri*, 601 U.S. 472, 476-77 (2024) (no discretion permitted when a court's action is commanded by law). Illogically, Ballou contends the law rewards a plaintiff who imprudently rejects a more favorable offer of judgment. It does not.

In sum, the District Court never compared Ballou's evaluation of her case to what she finally obtained. That failure alone is an abuse of discretion. *McGinnis*, 51 F.3d at 810.

**C.     The District Court's reliance on prior awards as the basis for calculating the lodestar necessarily shows it wrongfully equated Ballou's results with plaintiffs achieving significant success.**

Ballou argues the District Court appropriately accounted for her shortcomings because it selected an hourly rate less than what her attorneys sought. Br. of Appellee at 33-38. Not only is this "reduction" of "20%-26%" irreconcilable with *McCown*, *see supra* Part I.A, Ballou's rationale—that any rate reduction satisfies *Hensley*—invites dishonesty. Attorneys, knowing most of their case failed, will disingenuously petition for a rate astronomically higher than what courts have awarded in other, more successful cases, only to claim that the required reduction occurred when the court heeds precedent and "rel[ies] on [its] own knowledge of customary rates," *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). In fact, that is exactly what happened here.

To this end, a district court must "provide a clear indication of *how* it exercised its discretion," not just *that* it exercised discretion. *McGrath v. County of Nev.*, 67 F.3d 248, 253 (9th Cir. 1995) (emphasis added). The District Court selected $425/hour and $550/hour rates not out of thin air, but rather by consulting "rates approved by this Court when considering *comparable* Washington attorneys." 1-ER-10 (emphasis added). Once the District Court dubbed the attorneys from *Peña v. Clark County*, *Berg v. Bethel School District*, and *Thomas v. Cannon* as "comparable" to Ballou's attorneys, it expressly placed Ballou's

lawyers on par with the attorneys in *Peña*, *Berg*, and *Thomas*. Ballou nevertheless contends no court needed "to compare the results [of] *Peña*, *Berg*, and *Thomas* with the results in this case," ostensibly conceding that those lawyers achieved results exponentially better than hers. Br. of Appellee at 38. That view relegates a lawsuit's results to an afterthought—a mindset contrary to law. *Hensley*, 461 U.S. at 436.

Again, the District Court was well within its power to "rely[] on [its] own knowledge of customary rates." *Ingram*, 647 F.3d at 928. But when a court selects a rate based on other attorneys dubbed "comparable," the comparison made must be genuine, not imagined. Here, the District Court expressly compared attorneys achieving substantial success to Ballou's lawyers who mostly failed, concluding all were entitled to the same hourly rate and citing Ballou's failures as the reason why. Even if a court identifies the correct legal standard, it still abuses its discretion if it "applie[s] that legal standard in an illogical manner." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017). That is what happened here.

**II.    Because the District Court's lodestar calculation rests on a mistaken view of the law, the fee award cannot stand.**

Understandably, Ballou emphasizes the large discretion normally afforded district courts when awarding fees, Br. of Appellee at 17-18, pointing to what *Fox v. Vice*, 563 U.S. 826 (2011), said: "The essential goal in shifting fees … is to do rough justice, not to achieve auditing perfection," and that "appellate courts must give substantial deference to the [district court's] determinations, in light of the district court's superior understanding of the litigation." *Id.* at 838 (citation and internal quotation marks omitted). The City does not quibble with these tenets.

But despite Ballou's desire to end with the favorable soundbite, *Fox* continued: "But the trial court must apply the correct standard, and the appeals court must make sure that has occurred…. A trial court has wide discretion when, *but only when*, it calls the game by the right rules." *Fox*, 563 U.S. at 838-39 (emphasis added). This means that when a court fails to correctly apply the law, its decision gets reversed regardless of the discretion normally owed. *Id.* at 840-41 (vacating fee award as contrary to law). Consequently, "[i]f the parties contend the district court made a legal error in determining the fee award, then *de novo* review is required," *Thomas v. City of Tacoma*, 410 F.3d 644, 647 (9th Cir. 2005), meaning a fee award based on an error of law constitutes reversible error. *El-Hakem v. BJY, Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005).

The District Court committed two errors *of law* when it refused to segregate time spent specifically on one successful claim from everything else in the case—which Ballou lost. No deference is owed to those legal conclusions. *Thomas*, 410 F.3d at 647.

### A. Contrary to the District Court's assumption, no bright-line rule holds an employment relationship alone meets *Hensley*'s relatedness test.

The first legal error was reducing the relatedness inquiry to a litmus test, asking only whether the City employed Ballou. 1-ER-5 (identifying "Ballou's employment relationship with VPD" as the "common core of facts" linking Ballou's failed constitutional, disparate treatment, hostile work environment, and retaliation claims with one successful retaliation claim). The desire "to craft an easy-to-apply legal test" is not new. *Scott v. Harris*, 550 U.S. 372, 383 (2007). But simplicity does not always equal validity. *Id.*

Contrary to the lower court's view, *Odima v. Westin Tucson Hotel*, 53 F.3d 1484 (9th Cir. 1995), does not stand for any bright-line rule. 1-ER-5. Ballou doubles down nonetheless, contending that her allegations "of discrimination and retaliation are necessarily linked" simply because the "failure to promote" followed in time from "the oppositional conduct," and "McElvain[] is at issue in

both."[3] Br. of Appellee at 23. If relatedness turned only on whether opposition precedes adverse action, then *every* unsuccessful discrimination claim would be related to *every* successful retaliation claim. While sometimes true, *e.g.*, *Thorne v. City of El Segundo*, 802 F.2d 1131 (9th Cir. 1986), it is not *universally* true especially where—as here—the successful retaliation claim "was minor relative to the scope of the sex discrimination action." *Ambat v. City & County of San Francisco*, 757 F.3d 1017, 1032 (9th Cir. 2014); *see also* FER-050-072, 077-080 (argument for discrimination claims three times as long as argument for retaliation claims). The belief that nothing more than "Ballou's employment relationship with VPD," 1-ER-5, satisfied *Hensley*'s "common core of facts" test is inconsistent with both law and precedent.

Nevertheless, Ballou falsely rewrites the City's argument as depicting *Odima* as "a hostile work environment claim" to contend that her case paints a stronger picture of relatedness. Br. of Appellee at 22. That argument misses the mark. Odima based his successful discrimination claims on multiple instances of overt racism: ridicule of his Nigerian accent; insults that he should "go back to Africa;" and slights that he should "go to a black business to look for a job." *Odima*, 53 F.3d at 1490-91. Unsurprisingly, this evidence proved racial animus

---

[3] As explained *infra*, the only plausible way to interpret the verdict is by finding the absence of any retaliatory animus by McElvain. *See infra* Part III.C.

motivated the employer's refusal to promote him. Thus, when Odima alleged that quit under the erroneous belief that Westin "cheated him on his paycheck," *id.* at 1491, the court easily concluded that the unsuccessful discharge and retaliation claims "required virtually the same evidence" as what Odima advanced to successfully prove discrimination, *id.* at 1499. Unless Ballou contends that this conduct was acceptable workplace banter, any omission of the phrase "hostile work environment" is legally irrelevant. What matters is that the evidence needed to prove Odima's unsuccessful claims was "virtually the same" as what he used to prove his successful claims. *Id.*

Ballou's case is different. Unlike *Odima*, Ballou premised the lion's share of her case on what she described as "[a] culture of sex discrimination," pointing to "six deviations from normal practice without any good reason to do so" in IAC 2018-0034, which she unsuccessfully argued to be why gender discrimination prevented her most desired promotion in July 2018. FER-069. Ballou's evidence confirms its specificity to only gender claims: (1) males who McElvain promoted despite recent misconduct, 3-ER-450-451, (2) males under Sgt. Trumpf's supervision who, she claimed, failed to write reports but were investigated, *id.*; SER-140-141, (3) allegations predating McElvain's tenure of "a toxic and hostile work environment for females in this agency," and accusations that McElvain failed to sufficiently remedy the "organizational culture … as it relates to the

14

treatment of females," FER-053; *see also* FER-101, (4) examples of what Ballou claimed was disparate treatment of females in IA investigations, FER-057, and (5) a different female officer's allegations of "harassment" dating back almost a decade, FER-096. Ballou offered this evidence—discussing events preceding McElvain's tenure in Vancouver—to support her gender claims and her *Monell*[4] claim that a deliberately indifferent custom and practice of discrimination caused a constitutional violation. The jury squarely rejected these claims.

Contrary to Ballou's distorted narrative, the evidence used to prove retaliation all centered on temporal proximity. FER-070 (emphasizing "the timeline" as Ballou's "really important evidence" for retaliation). She pointed to her July, September, November, and January oppositional conduct to the emphasize how "the proximity" of "five more IAs" were initiated after she began complaining of discrimination, which she claimed led to McElvain promoting Ruder instead of her. *Id.* She also noted the length of time that these investigations took, FER-071, and that the October 2018 investigation into the alleged hit-and-run—the cited basis for denying Ballou a promotion in January 2019—was "massag[ed]" by persons other than McElvain. FER-072; *see also* FER-041-042, 092. Lastly, she pointed to Ballou being investigated after the lawsuit was filed

---

[4] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

(and after the one promotion found to be retaliatory) for lying. FER-077-079. This evidence related exclusively to Ballou's retaliation claim and was unconnected to what Ballou offered unsuccessfully to prove discrimination and §1983 liability. *See* FER-050-069, 080-081.

Put simply, neither Ballou nor the District Court attempted to explain how the evidence admitted to unsuccessfully prove gender discrimination was "virtually identical" to the evidence relied on to prove the January 2019 promotion was retaliatory. Rather, the District Court premised its relatedness analysis on a bright-line rule that neither *Odima* nor any other case created.[5] This was error.

### B.    Ballou's effort to dismiss Washington Supreme Court precedent is unavailing.

The District Court's second legal error was refusing to address, let alone apply, Washington's standard for awarding fees on unsuccessful WLAD claims. *See Kastanis v. Educ. Emps. Credit Union*, 859 P.2d 26, 36 (Wash. 1993). When "state substantive law governs a case, then an award of attorney fees is also governed by state law." *Muniz v. UPS*, 738 F.3d 214, 218 (9th Cir. 2013). Ballou

---

[5] It bears repeating that neither Title VII nor WLAD require proof of discrimination to prove retaliation. *Trent v. Valley Elec. Ass'n*, 41 F.3d 524, 526 (9th Cir. 1994) (Title VII); *Kahn v. Salerno*, 951 P.2d 321, 332 (Wash. Ct. App. 1998) (WLAD). The City never seriously challenged the reasonableness of Ballou's belief. *See* 3-ER-473-490.

argues without support that "*Kastanis* merely reinforces that if a trial court determines that the attorneys['] fees for successful and unsuccessful claims are inseparable, the plaintiffs are entitled to all fees awarded." Br. of Appellee at 23. The opinion says otherwise. *Kastanis* held that "trial court erred" because it included all hours in the lodestar without "ma[king] [an] express finding that plaintiff's successful and unsuccessful claims were inseparable," and "[i]t d[id] not appear that her successful and unsuccessful claims were inseparable." *Kastanis*, 859 P.2d at 36. A year after *Kastanis*, the Court clarified that even when WLAD "claims are related and *to some extent rest on a common core of facts*," a court must still sever time absent an express "find[ing that] the claims to be so related *that no reasonable segregation of successful and unsuccessful claims can be made*." *Hume v. Am. Disposal Co.*, 880 P.2d 988, 997 (Wash. 1994) (emphasis added). Nowhere does Ballou even attempt to argue that the District Court found a "reasonable segregation" was impossible, *id.*, or that her one successful claim was "inseparable" from the remainder of her lawsuit that she lost. *Kastanis*, 859 P.2d at 36. That Ballou so cavalierly dismisses *Kastanis* only highlights that the work for her failed claims was *not* "inseparable." *Id.* Regardless, the District Court's failure to explain how the January 2019 promotion was "inseparable" from the rest of the case that Ballou lost represents another legal error warranting reversal.

17

**III.    Only by distorting case law, McElvain's appellate arguments, and the verdict can Ballou defend the District Court's failure to explain why *Ballou I* was necessary to prove one claim against a different defendant to which no right of interlocutory review existed.**

The District Court never attempted to explain how time spent opposing McElvain's quest for qualified immunity in *Ballou v. McElvain*, 29 F.4th 413 (9th Cir. 2022) (*Ballou I*), contributed to successfully proving a fraction of her Title VII and WLAD retaliation claims. Ballou cannot exercise the District Court's discretion for it. *Camacho*, 523 F.3d at 979. To this end, whether a plaintiff who partially prevails against one defendant may legally recover fees for time opposing an appeal filed by a different defendant against whom the plaintiff lost entirely at trial is a pure question of law reviewed *de novo*. *Thomas*, 410 F.3d at 647. As much as Ballou wants to characterize McElvain's appeal as including City, their interests remained legally different. *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 611 n.3 (2015) ("Whatever contractual obligations [a municipal employer] may (or may not) have to represent and indemnify the officers are not our concern," because individual "officers have a personal interest in the correctness of the judgment below, which holds that they may have violated the Constitution."). Ballou offers no authority to challenge the distinctiveness between an individual's and municipality's interests vis-à-vis qualified immunity as recognized by *Sheehan*.

18

### A.   The authority on which Ballou relies does not help her because Ballou lost all her claims against the sole appellant in *Ballou I*.

Not disputing the City's calculation of these hours as attributable exclusively to *Ballou I*,[6] Ballou defends the inclusion of this time by summarily arguing that "the appeal was a reasonably necessary step to her ultimate victory at trial," citing *Romberg v. Nichols*, 970 F.2d 512 (9th Cir. 1992), and *Cabrales v. City of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991), for support. Br. of Appellee at 25. Neither *Romberg* nor *Cabrales* vaults Ballou's "victory" in *Ballou I* to something "more than the mere right to proceed to trial" on her §1983 claims against McElvain, *Marks v. Clarke*, 102 F.3d 1012, 1034 (9th Cir. 1996), an achievement on which fee awards may not rest, *Hewitt v. Helms*, 482 U.S. 755, 760 (1987). Contrary to Ballou's assertion, both *Romberg* and *Cabrales* involved plaintiffs who fully prevailed *at trial* against defendants who partially prevailed in *earlier appeals*. *Romberg*, 970 F.2d at 521 (reaffirming the plaintiffs prevailed at trial against all six defendants); *Cabrales*, 935 F.2d at 1052 (time spent by plaintiff who "won her civil rights lawsuit" and "ha[d] a $150,000 jury award to prove it" could recover time for opposing initial petition for certiorari when the plaintiff "ultimately prevailed on the precise issue presented by the first petition," namely whether the verdict should be upheld). Nothing in *Romberg* or *Cabrales* suggests a plaintiff

---

[6] *See* 2-ER-52-54 (calculating 50.7 hours by Ellis and 46 hours by Brischetto).

19

may recover for time spent successfully opposing an interlocutory appeal initiated by a defendant when that defendant fully prevails *at trial*. As much as Ballou wants to believe that she prevailed against McElvain, the jury said otherwise. 2-ER-318-319. Even the District Court acknowledged her defeat. 1-ER-25 ("As it stands now, Defendant McElvain was deemed to have not violated any law and otherwise completely prevailed against Plaintiff.").

**B.  Contrary to Ballou's supposition, McElvain's appeal focused solely on the constitutional claims that Ballou ultimately lost.**

Realizing the law affords her no benefit, Ballou pivots to twist McElvain's appeal into claiming the City was the real party in interest. Br. of Appellee at 25. She advances three reasons for support, but none are credible. First, she points to McElvain's arguments that evidence of retaliation could not be used to prove discriminatory animus, suggesting such improperly challenged the sufficiency of Ballou's retaliation evidence. *Id.* This argument is baseless. Whether Ballou's evidence sufficiently "support[ed] an inference of *discriminatory* animus" solely addressed Ballou's Equal Protection disparate treatment claim, *which Ballou lost*. 2-ER-319. Regardless, "determining the materiality of disputed facts is a question of law over which [the court has] jurisdiction." *Hart v. City of Redwood City*, 99 F.4th 543, 548 (9th Cir. 2024). That McElvain challenged the materiality of evidence cited to deny him qualified immunity did not make the City an appellant,

20

particularly when "Ballou[']s [ability to] have her day in court" on her "Title VII and state law … retaliation claims" was never at issue. SER-291

Next, Ballou misrepresents McElvain's arguments as challenging "factual determinations about whether other employees were proper comparators or 'similarly situated' under Title VII." Br. of Appellee at 25. Like the materiality argument referenced in the preceding paragraph, whether comparators were "similarly situated" spoke only to Ballou's Equal Protection claim. SER-262-272. And like the materiality argument, McElvain's contention that "the 'similarly situated' inquiry under the Equal Protection Clause [wa]s more demanding than" Title VII, SER-265, advanced a "purely legal issue[]" that his conduct "did not violate the [Fourteenth] Amendment and, in any event, did not violate clearly established law." *Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014). This conclusion amplifies the absurdity of Ballou gloating that *Ballou I* characterized McElvain's Equal Protection arguments as "profoundly mistaken" and "profoundly incorrect." Br. of Appellee at 26 (quoting *Ballou I*, 29 F.3d at 424-26). What matters is that the jury found her Equal Protection claim to be profoundly mistaken. 2-ER-318-319. Regardless of how *Ballou I* handled McElvain's Equal Protection argument, the time Ballou spent on appeal salvaging a claim the jury squarely rejected undeniably contributed nothing to the completely independent fraction of her case on which she prevailed.

Lastly, Ballou overgeneralizes one part of the appeal over which *Ballou I* declined jurisdiction, which she describes as a "back-door argument" that Ballou could not prove "causation of retaliation by the City." Br. of Appellee at 25. Again, Ballou is wrong. McElvain's appeal regarding the First Amendment claim centered primarily on whether Ballou's complaints invoked a matter of public concern, a threshold consideration to invoke constitutional protections. SER-274-285. The backup causation argument focused on the *District Court's* statement that the *law* surrounding First Amendment causation was "'not at all clear,'" SER-287 (quoting FER-133), which the District Court made after it *agreed* with "[t]he fact [McElvain] did not know Ballou filed an actual lawsuit until after he promoted" Ruder, FER-133. McElvain accepted that finding for the appeal. SER-287. That *Ballou I* thought otherwise does not transform the appeal into one challenging "claims that were only advanced against the City," Br. of Appellee at 25, particularly when McElvain clearly acknowledged Ballou's claims against the City City would proceed to trial. SER-291. Regardless of how *Ballou I* handled the issue, no one disputed that Ballou's July 9, 2018, email (3-ER-450-451) and two tort claims (3-ER-453-455, 3-ER-463-465) constituted oppositional conduct sufficient to trigger Title VII and WLAD. SER-291.

In sum, Ballou's assertion that successfully defending the qualified immunity denial was necessary[7] to take her Title VII and WLAD retaliation claims against a different party across the finish line is a disingenuous attempt to rewrite history. The Court should reject it.

### C. When juxtaposed against the jury instructions, the verdict negates any inference that McElvain was found to have acted with retaliatory animus, further undermining any contention that time spent in *Ballou I* should have been compensated.

Unlike *Ballou I* which was decided on summary judgment, Ballou's testimony, evidence, and theories are no longer accepted at face value. *Cf. Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam). This includes her false contention that McElvain was the "[o]ne person [who] directed all decisions to investigate Plaintiff." Br. of Appellee at 20, 26. To the contrary, the sergeant who conducted all investigations (Barbara Kipp) confirmed that McElvain did not influence or direct her in any way, including those investigations occurring after Ballou began complaining. FER-020-021, 027, 033, 038. McElvain confirmed his involvement was limited to being present for discussions surrounding the investigations. FER-014-015. That is a far cry from "directing" any investigation of Ballou, particularly

---

[7] Ballou falsely asserts that the causation issue "resulted in significant attorney time." Br. of Appellee at 25. Her brief from *Ballou I* proves otherwise as her counterargument spanned only one paragraph. FER-105-106.

when "[t]here is no way that the police chief can be that involved in the internal affairs process," FER-010.

Despite this, Ballou supports the inclusion of *Ballou I* in the lodestar by asserting the jury found McElvain acted with retaliatory animus. *See* Br. of Appellee at 26-27. An honest examination of the verdict exonerating McElvain rebuffs that assertion. *See* 1-ER-319. The only way McElvain could have been exonerated from Ballou's First Amendment claim despite a finding he acted with animus was if the jury concluded "McElvain would have [promoted Ruder] even in the absence of any motive to retaliate." 3-ER-332. In other words, McElvain's exoneration from Ballou's First Amendment claim hinged on the jury rejecting "but-for" causation, *i.e.*, that "the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019). But that alternative conflicts with the jury siding with Ballou on her Title VII retaliation claim given that "but-for" causation was an essential element. 3-ER-334-335; *accord Bostock v. Clayton County*, 590 U.S. 644, 656 (2020) (plaintiff claiming Title VII violation must prove but-for causation).

Inconsistent as these verdict answers may seem, the court has a duty to harmonize them, if possible, by consulting the instructions. *El-Hakem*, 415 F.3d at 1074. Over Defendants' objections, the court adopted Ballou's proposed instructions that the City would be liable under Title VII and/or WLAD if the jury

24

found "retaliation at any stage in [the] promotional process … influence[d] a decisionmaking process and allow[ed] … retaliation to infect a final decision." 3-ER-336; *see also* 3-ER-339, *and* FER-126, FER-103-104. Ballou highlighted these instructions in closing, FER-049, opening the door to a verdict premised on conduct wholly separate from McElvain. The jury plausibly concluded McElvain *never* acted with retaliatory animus, but that his decision to promote Ruder over Ballou in January 2019 was "infect[ed]" by the animus of others. 3-ER-336. In this sense, the foundation for Ballou's assertion that her efforts in *Ballou I* to deny McElvain qualified immunity was "necessary" to prove Title VII and WLAD retaliation for *the last* promotional decision crumbles.

Awarding Ballou compensation for time litigating against McElvain is untenable, particularly when as the District Court also concluded that "McElvain was deemed to have not violated any law and otherwise completely prevailed against Plaintiff." 1-ER-25. Neither this time nor any other spent exclusive on the time for McElvain's claims should have been included in the lodestar.

25

**IV.   The upward adjustment wrongly Ballou a functionally full fee despite minimal success, a decision finding no basis in law or fact.**

Believing a lodestar $458,817.25 to be insufficient, the District Court increased Ballou's award by $152,393.18. 1-ER-14. Ballou defends that decision with several arguments, but none persuades.

First, Ballou contends that "[t]he Court did not rely on federal law for its enhancement," so that any federal case cited by the City should be ignored. Br. of Appellee at 46. The District Court expressly cited *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), and *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008), to support its decision. 1-ER-13-14. Ballou fails to explain how neither *Kerr* nor *Moreno* is "federal law."

Second, contrary to Ballou's assumption that Washington law freely grants multipliers, courts emphasize that their use "should be rare" and criticize the practice of "granting … multiplier[s] routine[ly]." *Berryman v. Metcalf*, 312 P.3d 745, 760 (Wash. Ct. App. 2013). Yet the District Court undisputedly copied and pasted its previous analysis to award the same 33% multiplier it granted a couple months earlier. *Compare* 1-ER-12-14 *to* Br. of Appellant, Appx. B at 10-11.

Third, Ballou posits that "[t]he Court makes no reference to *Kerr* or any of the *Kerr* factors in the Court's lodestar analysis," Br. of Appellee at 52-53. Not so. For example, the court cited (among other factors) "the time and labor required for counsel to prepare a factually complex case" to support a multiplier, 1-ER-13,

immediately after writing "Plaintiff … had to build her factually complex case" to justify its lodestar, 1-ER-11. *See also* Br. of Appellant at 56-59 (identifying other factors counted twice). Whether consulting federal or state law, using any lodestar factor to justify a multiplier constitutes an abuse of discretion. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988); *Bowers v. Transam. Title Ins. Co.*, 675 P.2d 193, 204 (Wash. 1983).

Fourth, every case cited by Ballou upholding a multiplier involved plaintiffs achieving significant success. *E.g.*, *Baker v. Fireman's Fund Ins. Co.*, 428 P.3d 155, 165 (Wash. Ct. App. 2018) (noting "the exceptionally favorable result … obtained on behalf of their clients"); *Bloor v. Fritz*, 180 P.3d 805, 811 (Wash. Ct. App. 2008) (complete victory for plaintiff against all defendants); *Perry v. Costco Wholesale, Inc.*, 98 P.3d 1264, 1276 (Wash. Ct. App. 2004) ($300,000 verdict on sexual harassment claim); *Carlson v. Lake Chelan Cmty. Hosp.*, 66 P.3d 1080, 1086 (Wash. Ct. App. 2003) ($400,000 verdict in wrongful termination case). That did not happen here, undermining Ballou's reliance on *Perry* for her contention that results need not be consulted. *Contra Hensley*, 461 U.S. at 440.

Fifth, Ballou contends that "Defendant offered no evidence" to dispute the multiplier. Br. of Appellee at 48. Contrary to Ballou's assumption, it was never the City's burden to demonstrate a multiplier's unreasonableness; rather, Ballou shouldered the burden to justify the fees sought. *Perdue*, 559 U.S. at 553; *Morgan*

*v. Kingen*, 210 P.3d 995, 1000 (Wash. 2009). She submitted nothing specific to describe any claimed low "likelihood of success at the outset of the litigation." *224 Westlake, LLC v. Engstrom Props., LLC*, 281 P.3d 693, 713 (Wash. Ct. App. 2012). Now, she points only to the general recognition that some plaintiffs lose and "her counsel's statements of risk." Br. of Appellee at 48. As stated in the City's opening brief, those "statements of risk" were conclusory and untied to the lawsuit's genesis.

Lastly, Ballou defends the public benefit "analysis" by arguing her lawsuit improved "the Department's treatment of Ballou and other women." Br. of Appellee at 56.[8] At least two reasons illustrate this rationale's flaws. First, unlike summary judgment where Ballou must be believed, *Tolan*, 572 U.S. at 651, the jury concluded women at the department—to include herself—were treated

---

[8] Ballou deceptively touts her lawsuit as successful by pointing to McElvain's refusal to demote her after her deposition. *See* Br. of Appellee at 6. That ignores is the context of McElvain's testimony. When informed that she violated policy, Ballou at the time "took complete responsibility for [failing to write reports], indicated that [she] now understood the report preparation policy and would not make this mistake again." 3-ER-448. But when deposed over a year later, Ballou called the policy unclear and even asked, "what [do] you mean by, Report?" FER-132-133. Any police chief would be rightfully frustrated with an officer purporting to "accept responsibility" for misconduct to avoid harsher discipline only to later blame everyone and everything else for the transgressions. *See* SER-095-096. Nothing in Title VII or WLAD supports enhancing a fee reward when a plaintiff manipulates the legal system to avoid accountability. If anything, the jury's agreement that Ballou violated policy as found in IAC 2018-0034 undermines Ballou's characterization of success.

equally. 2-ER-318-319. Second, the only connection drawn by the District Court to the public benefit was the City's municipal status. 1-ER-13. The statutes conveying prevailing party status here apply with equal force to public and private defendants alike, *Christian v. Umpqua Bank*, 984 F.3d 801, 805 (9th Cir. 2020), meaning no textual basis exists to treat public defendants differently from their private counterparts. Surely, if governmental status alone was enough to justify a multiplier, they would occur regularly in §1983 cases because "state action" is an essential element. *Linke v. Freed*, 601 U.S. 187, 194-95 (2024). The Court has rebuked this thought. *Perdue*, 559 U.S. at 558. Here, no public benefit was identified other than the City being a municipality. The conduct found by the jury to be unlawful implicates only Vancouver's police officers, *i.e.*, one segment of one employer's workforce. Any "public benefit" is nonexistent when compared to cases finding an unlawful practice truly affecting all citizens. *Cf. Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996) (plaintiff verdict guided city in "establish[ing] and implement[ing] official policies governing the arrests *of citizens*) (emphasis added).[9]

---

[9] Notably, *Morales* had nothing to do with multipliers. Rather, the Court there overturned a fee award diminished to "just forty percent of what the *defendants* originally suggested." *Morales*, 96 F.3d at 361. The Court found the reduction excessive considering the public's interest in not being unlawfully arrested. *Id.* at 364.

In sum, the District Court's reasoning for increasing an already excessive fee award is indefensible.

## V. By failing to appeal the FRCP 68 order holding her liable for Defendants' costs, Ballou forfeited any right to seek fees on appeal.

Lastly, Ballou says she is entitled to recover attorneys' fees on appeal. Br. of Appellee at 59. Even if this Court affirms, she is wrong. By not cross-appealing the FRCP 68 order, 1-ER-16-28, Ballou cannot ask this Court to enlarge her rights. *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 480 (1999). Thus, the conclusion that "the judgment [Ballou] finally obtained [wa]s not more favorable than the unaccepted Rule 68 offer of judgment" is a verity, 1-ER-26, meaning Ballou was obligated as a matter of law to pay all the City's post-offer costs and forego all post-offer fees, *Marek*, 473 U.S. at 9; *Champion Produce*, 342 F.3d at 1026.

This verity notwithstanding, Ballou claims that *Guerrero v. Cummings*, 70 F.3d 1111 (9th Cir. 1995), resurrected her ability to seek fees. Br. of Appellee at 59.[10] *Guerrero* denied fees to appellants who lost their appeal. *Id.* at 1114. In no way did *Guerrero* implicitly suggest that FRCP 68's mandatory cost-shifting

---

[10] Ballou cites several statutes she claims entitles her to attorneys' fees. All but one speaks to claims Ballou never asserted, namely Washington's Minimum Wage Act, ch. 49.48 RCW, and the federal Family Medical Leave Act, 29 U.S.C. § 2617. The one WLAD opinion cited did not involve a rejected offer of judgment. *See Wheeler v. Catholic Archdiocese*, 880 P.2d 29, 31 (Wash. 1994).

provision self-destructs so long one side appeals. To be sure, *Guerrero* considered the appeal of a plaintiff who—unlike Ballou—accepted a FRCP 68 offer. *Id.* at 1113. In essence, Ballou seeks to enlarge her rights from where they stood at the conclusion of the District Court's jurisdiction even though she never cross-appealed. Supreme Court precedent forbids her from doing so. *Neztsosie*, 526 U.S. at 479.

## CONCLUSION

"Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill." *Hensley*, 461 U.S. at 436. Because "[t]he result is what matters, … the most critical factor is the degree of success obtained." *Id.* at 435-36. The District Court lost sight of this guidance, especially when it arbitrarily increased a fee award by over $150,000 for a plaintiff who mostly lost.

For all the foregoing reasons and for those articulated in the City's opening brief, this Court should reverse, vacate, and remand.

DATED this 3rd day of March, 2025.

CITY ATTORNEY'S OFFICE
  VANCOUVER, WASHINGTON

By:   /s/ Daniel G. Lloyd

DANIEL G. LLOYD, ESQ.
SARA BAYNARD-COOKE, ESQ.
Assistant City Attorneys
P.O. Box 1995, Vancouver, WA 8668
**Tel:** (360) 487-8500/**Fax:** (360) 487-8501
dan.lloyd@cityofvancouver.us
sara.baynard-cooke@cityofvancouver.us

*Attorneys for Defendant-Appellant*
*City of Vancouver*

## CERTIFICATE OF COMPLIANCE

9th Circuit Case No.: 24-4530

I am the attorney for the Appellant.

**This brief contains** 6,984 words, excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of 9th Cir. R. 32-1.

DATED this 3rd day of March, 2025.

                                   CITY ATTORNEY'S OFFICE
                                    VANCOUVER, WASHINGTON

                                   By:      /s/ Daniel G. Lloyd
                                       DANIEL G. LLOYD, ESQ.
                                       Assistant City Attorney
                                       P.O. Box 1995
                                       Vancouver, WA 98668-1995
                                       Tel: (360) 487-8500
                                       Fax: (360) 487-8501
                                       dan.lloyd@cityofvancouver.us

                                       *Attorney for Defendant-Appellant*
                                       *City of Vancouver*

33